IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>  Plaintiff,  )<br>  )<br>v.  )<br>  )<br>JERRY RAYNE aka  )<br>JERRY PAYNE,  )<br>  )<br>  Defendant.  )<br>_____) | Case No. CR-05-114-S-BLW<br><br>**SENTENCING MEMORANDUM** |

## INTRODUCTION

On May 13, 2005, an Information (Docket No. 22) was filed charging Defendant with (1) conspiracy to distribute methamphetamine, (2) possession of methamphetamine with intent to distribute, (3) possession of a firearm in furtherance of a drug trafficking crime, and (4) forfeiture pertaining to the firearm and ammunition.  The case scheduled for trial on July 25, 2005.  On July 22, 2005, Defendant, without the benefit of a plea agreement, pled guilty to Counts 1 and 4 of the Information.  The Government subsequently moved to dismiss Counts 2 and

**SENTENCING MEMORANDUM - 1**

3, and the Court dismissed those Counts without prejudice.

The presentence report recommended a Base Offense Level of 38 based on drug quantity, recommended a 2-level increase pursuant to § 2D1.1(b)(1) for possession of a weapon in connection with the offense, and presumed a 3-level reduction for acceptance of responsibility for an adjusted offense level of 37.  The firearm enhancement was based on a loaded firearm found in Defendant's bedroom as well as on the two weapons possessed by one of Defendant's co-conspirators. The Government, however, refused to file a motion for the third level adjustment for acceptance of responsibility and, although it appears that the Government's decision not to file such a motion is conclusive on the issue,  the Court concluded that the Government was substantially justified in refusing to make such a motion because the guilty plea was only tendered on the eve of trial.  Accordingly, the presentence report calculation was modified upward by one level resulting in an adjusted offense level of 38 which, with a criminal history category of I (based on 0 points), yielded a sentencing range of 235 to 293 months.

Defendant objected to the drug quantity and the firearm enhancement and argued for a 2-level downward adjustment for minor role.  If Defendant were successful on all contentions, the adjusted base level would have been 31.  The Defendant argued, in the alternative, that if he were unsuccessful on all

**SENTENCING MEMORANDUM - 2**

contentions, the same adjustment should be made through a 6-level downward variance. The Defendant requested an additional variance of 2 levels based on Defendant's mental state as reflected in Dr. Hoopes' report (Docket No. 39). If all of the Defendant's requests had been granted, the adjusted offense level would have been 29, which would result in a guideline range of 87 to 108 months.

Boise Police Department Detective Rob Berrier testified on behalf of the Government. Defendant testified on his own behalf.

## ANALYSIS

1. **Drug Quantity**

The presentence report found Defendant accountable for 1,901.4 grams of actual methamphetamine which yielded an offense level of 38 which applies to quantities in excess of 1.5 kilograms of actual methamphetamine. *See* § 2D1.1(c)(1.). Defendant argued that he was accountable only for those drugs found in his residence which he admitted was 1,405.81 grams resulting in an offense level of 36.

Detective Berrier testified that the conspiracy consisted of Garcia who obtained the drugs, Babbs who repackaged the drugs and delivered them for storage to Defendant, and Defendant who stored the drugs because Garcia did not trust Babbs to retain possession. Defendant would then release the drugs to Babbs

**SENTENCING MEMORANDUM - 3**

as directed by Garcia.

Detective Berrier testified that at the time he served the search warrant on Defendant, he found a vial of methamphetamine on Defendant's person and Defendant admitted to him outside on the patio that he had four pounds of methamphetamine in his basement.  He further testified that a search of the basement yielded the four pounds in the storeroom and an additional amount of methamphetamine in Defendant's bedroom together with 41 baggies, approximately $2,000 in cash, and a loaded firearm.  He further testified that, at the police station, Defendant admitted that he personally had three or four customers to whom he sold approximately two to three ounces a week of methamphetamine.

Detective Berrier also testified that on March 23, 2005, investigators followed Babbs to the Defendant's residence prior to making a controlled sale to a confidential informant of 223 grams of methamphetamine.  That amount was tested and determined to be 184.22 grams of pure methamphetamine.  Babbs later indicated to the officers that he had obtained the methamphetamine from the Defendant.

Defendant, at the sentencing hearing, denied telling the officers that there were four pounds of methamphetamine in his basement and denied telling that that he had sold drugs to his own personal customers.  He testified that he was told by

**SENTENCING MEMORANDUM - 4**

co-conspirator Babbs that the box in which the four pounds were found contained a gift for his girlfriend. He believed him because in the past Babbs had stored the drugs in the shop rather than inside the house. However, Defendant agrees that he is accountable for whatever drugs had been stored in his house. He denied any accountability for any drugs that were the subject of the controlled buys outlined in the presence report.

     The Court finds Detective Berrier's testimony to be credible and Defendant's testimony to be implausible regarding the statements made about the four pounds found in the house. Accordingly, the Court concludes that the Defendant is properly held accountable for the drugs identified in in paragraph 28 of the presentence report. Those drugs, when added to the .71 grams found on Defendant's person (paragraph 27) and the 15.53 grams found in his bedroom (paragraph 30) total 1, 405.81 grams of pure methamphetamine. The Court further finds that he is accountable for the 184.22 grams which Babbs sold to the confidential informant since it is undisputed that Babbs obtained those drugs from the Defendant. Thus, the total for which Defendant is accountable is 1,590.03 resulting in a base offense level of 38. It is therefore unnecessary for the Court to make any further findings with regard to the drugs which Babbs sold to police informants during other controlled buys or the drugs found at Babbs' residence.

**SENTENCING MEMORANDUM - 5**

However, if necessary, the Court would also find that those additional amounts are attributable to the Defendant since the undisputed evidence is that all of Babbs' drugs were obtained from the Defendant under the direction of Garcia.

Indeed, the evidence is so overwhelming on this issue, that the Court would have little trouble finding the Defendant accountable for at least 1,590.03 under a heightened evidentiary standard of clear and convincing evidence.

**2.      Firearm Enhancement**

The presentence report states that co-defendant Garcia was in possession of two firearms.  Defendant does not contest this statement.

In addition, Detective Berrier testified that an Idaho State Police Officer found a loaded firearm on the shelf in Defendant's bedroom next to a substantial quantity of methamphetamine, drug paraphernalia, and a large quantity of cash.  In addition, the firearms were located a maximum of 30 feet from the four pounds of methamphetamine in the adjacent storage room.  Defendant does not contest this but argues that he did not possess it in connection with the drug conspiracy.

Application Note 3 to § 2D1.1 states that the 2-level adjustment should be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense."  When the government establishes that the Defendant actually or constructively possessed a weapon, the burden is on the

**SENTENCING MEMORANDUM - 6**

Defendant to show that it is clearly improbable that the possession was connected to the offense.  Defendant has failed to meet that burden regarding the firearm found in his possession.  Furthermore, the possession of a firearm by co-conspirator Garcia was reasonably foreseeable given the large amount of drugs involved in this conspiracy.  Accordingly, the Court overrules Defendant's objection to the 2-level firearm enhancement.

3.     **Acceptance of Responsibility**

The Court concurs with the presentence investigator's finding that Defendant has accepted responsibility for his role in the conspiracy.  However, the Government has refused to move for the additional 1-level adjustment on the grounds that it was not spared the expense of preparing for trial given the fact that Defendant did not agree to plead guilty until a few days before trial.  Accordingly, the presentence report must be modified to reflect a 2-level rather than 3-level adjustment for acceptance of responsibility resulting in an adjusted level of 38 rather than 37.

4.     **Role in Offense**

Defendant maintains that he was a mere warehouseman for the drugs involved in the conspiracy and that he should therefore receive a 2-level downward adjustment for a minor role in the offense.  The Government argues that

**SENTENCING MEMORANDUM - 7**

Defendant's role was integral to the conspiracy and that his involvement was at least equal to that of Babbs.

The Court finds that Defendant was more than a minor participant in the overall scheme. Although his principal role was as a warehouseman, the evidence shows that he was also involved in drug trafficking, albeit on a limited scale. Moreover, his role was critical to the successful operation of the conspiracy, given Garcia's distrust of Babbs. Therefore, Defendant is not entitled to a 2-level reduction for minor role.

5.   **Summary of Guideline Calculations**

Based on the above, the Court finds that the adjusted offense level is 38 which, with a criminal history category of I results in an guideline range of 235 to 293 months. The Court finds that under the circumstances of this case, the guidelines range results in an overly harsh sentence. The Court will now turn to a consideration of the sentencing factors set forth in 18 U.S.C. 3553(a).

6.   **Variance Pursuant to 3553(a) Sentencing Factors**

The Court has looked to the nature and circumstances of the offense and finds that Defendant did play an important role in the conspiracy that spanned an eight-month period. However, this case was unique in that the Defendant's role, although critical to the conspiracy's success, was limited in nature. He was almost

exclusively a warehouseman of the drugs. He was not a primary distributor, did not keep any ledgers, did not collect drug debts, did not transport the drugs from its source, and did not participate in any decision-making. He simply stored the drugs at his home and distributed them to Babbs as directed by Garcia. The Court also notes that although the defendant admitted making some sales of methamphetamine, it appears that he was freelancing when he did so and he certainly was not a primary distributor. There was no evidence presented of any specific sales that he made or of any specific customers that he serviced. Moreover, the Court also concludes, based upon its observations of the Defendant during the sentencing proceeding, that the Defendant suffers from mental limitations that would have prevented him from engaging in anything more sophisticated than a few isolated sales to close friends. Any drug trafficking beyond that would simply be beyond the Defendant's capabilities.

The Court next looked to the history and characteristics of Defendant and notes the following: The Defendant has virtually no prior criminal record and received no criminal history points. It is clear to the Court that the Defendant has limited intellectual ability. This is born out by the fact that he has only an eighth grade education. Based upon his testimony during the sentencing hearing, it is clear that he also has difficulty communicating at any level. It also appears that he

**SENTENCING MEMORANDUM - 9**

has a fairly severe learning disability.  He has been diagnosed as suffering from ADHD (attention deficit hyperactivity disorder), for which he may have been self-medicating by abusing methamphetamine.

In making these determinations, the Court has considered Dr. Hoopes' report regarding Defendant's mental and emotional deficiencies, as well as the Court's observations of the Defendant during the sentencing hearing, at which time the Defendant struggled to communicate on the most basic level and clearly demonstrated that he has a limited intellectual capacity.  Although the Defendant's condition does not rise to the level necessary to support a guideline departure, it does, when considered in conjunction with his limited role in the conspiracy, call into question the reasonableness of a sentence within the established guideline range of 235-293 months.

Finally, the Court looked at the need for adequate deterrence.   The defendant's lack of any prior criminal record suggests that there is little likelihood of recidivism.

Taking all of those factors into consideration, the Court finds that a sentence within the guideline range would be unreasonable under the sentencing criteria set forth in 18 U.S.C. § 3553(a).  A 3-level downward variance from the guidelines is therefore warranted.  The offense level, therefore, becomes 35 resulting in a

guideline range of 168 to 210.  The Court finds that a sentence in the middle of that range is sufficient, but not greater than necessary, to meet the 3553(a) factors.  Accordingly, the Court sentenced the Defendant to 180 months.

DATED:  **October 19, 2005**

B. LYNN WINMILL
Chief Judge
United States District Court

**SENTENCING MEMORANDUM - 11**